WILLIAM H. ROGERS v. ELIZABETH B. MONROE ET AL.

1. **Hypothetical Question Based on Assumed Fact Disproved by Evidence Properly Excluded.**

   It is not prejudicial error to sustain an objection to a hypothetical question which is based on an assumed fact that is supported by some evidence, but is clearly disproved by the manifest weight of the evidence.

2. **Nonexpert Testimony as to Mental Capacity of Testator Limited.**

   In the trial of an action to contest the validity of a will the opinion of a nonexpert witness as to the mental capacity of the testator must be confined to a time when such testator is under the observation of the witness.

3. **Photograph of Testator at Time of Execution of Will Admissible.**

   A photograph of a testator, taken at or near the time his will was executed, may be a useful and competent item of evidence in an action to set the will aside, but it is not prejudicial error to sustain an objection to the introduction of such a photograph which was taken eight or nine years prior to the execution of the will or codicil which is under attack.

[Syllabus by the court.]

ERROR.

*Benjamin F. James,* for plaintiff in error.
*N. R. Harrington,* for defendant in error.

## RICHARDS, J.

This action was brought for the purpose of contesting the validity of a codicil to the will of William Rogers. The original will was executed in 1899, and the codicil on October 20, 1911. By the terms of his original will his property was left to his wife during the term of her life, and at her decease it was to go to the children and grandchildren of the testator. In the codicil he ratifies and confirms the provisions of the original will and then adds a bequest in favor of Elizabeth B. Monroe of $8 per week during the time that she should care for him and his wife. The codicil also provides that interest should be computed at five per cent. on the amounts to become due her for

Rogers v. Monroe.

services and which were given to her by the terms of the codicil.

William Rogers was at the time of the execution of this codicil of about the age of ninety-one years, and it is contended that he did not have sufficient testamentary capacity to execute the instrument and that the same was the product of undue influence. The testator was born in England and spoke the English language with a decided brogue. He was the owner of forty-six acres of land which he had purchased many years before at a low price, but which was worth at the time of his decease approximately $8,000. In the year 1909 the dwelling-house situate on this tract of land was destroyed by fire, and this loss seems to have more or less affected his condition. In the succeeding year he suffered a slight stroke of paralysis which affected his right arm and side and to a limited extent interfered with his speech. Some witnesses testify to a difficulty in understanding what he said, but it appears that because of his brogue that difficulty had always existed to a greater or less extent. He seems to have suffered his full share of afflictions, having during the last few years of his life a cancerous growth on his face and a toe affected with gangrene. It appears from the evidence that he subscribed regularly to a daily paper, that he took a church paper, and that he frequently read from the Bible, but during the last few years of his life apparently he did not do much reading himself, but had others read to him. It is clear from the evidence that he was naturally a man who was very taciturn all his life, and that this condition perhaps increased with his age; at any rate he could not be charged with the garrulity which is sometimes witnessed in aged people.

With his increasing years, feebleness, probably both of mind and body, came on gradually. In 1899 he was married for the third time and to a woman who still survives and is of the age of about ninety-one years. She had been theretofore married and had a daughter named Elizabeth B. Monroe of the age of forty-seven years. This daughter is a defendant in this action and came to care for her mother and stepfather in June of the year 1911. Some question having been raised by certain of the children of William Rogers, he asked Mrs. Monroe to ac-

company him to Bowling Green, which she did, on October 20th, 1911, and he there executed the codicil in question and on the same day entered into a written contract with her providing specifically for the terms of her employment, the same being in accordance with the provisions of the codicil.

The evidence leaves no room for doubt but that Elizabeth furnished to the aged people excellent care, and that they were clearly in a condition requiring that kind of care is apparent. She had had much training as a nurse and was able to do whatever household work was necessary about the house, and in addition to care for the cancer with which he was afflicted and to dress the toe which was affected with gangrene.

William Rogers died on August 18th, 1913, of a final stroke of paralysis and a gradual weakening of the powers of his body and mind incident to old age, and called by some of the witnesses senile dementia. The jury on the trial of the case returned a verdict sustaining the codicil.

We have carefully read the evidence contained in this record, and from such examination we are unanimously of the opinion that the verdict returned by the jury is sustained by sufficient evidence. Many objections and exceptions were taken during the trial of the case. During the examination of Dr. C. M. Deibert, who was the family physician of the deceased, he was asked his opinion as to the capacity of the testator to make a rational selection among the objects of his bounty. To this question an objection was made by counsel for the defendants, and that objection was sustained, and the plaintiff excepted to the ruling of the court; but no offer was made to prove what the witness would answer in response to the question, and without such offer prejudicial error is not made apparent.

A hypothetical question was submitted to Dr. Powell and the identical question to Dr. Stove. and these witnesses were not allowed to answer as experts the question so submitted. The question is very lengthy and undertakes to review all the facts disclosed in the case and concludes with an inquiry as to the capacity of the testator to comprehend the relations which he held to those who had claims on him and to keep them in mind long enough to form a rational judgment in regard to them, and

Rogers v. Monroe.

to make a rational selection among them. This question assumes as a fact that for a period of five years or more before the testator's death he had performed no business. In view of the testimony of Ross Rogers, a son of the plaintiff, and Ophelia H. Rogers, the wife of the plaintiff, who testified that they did not know of his doing any business and were so situated as to probably have knowledge if he had performed any business, we think counsel were justified in assuming as a fact that the testator had not performed any business. Nevertheless, when the evidence was all in, it clearly appeared that the testator did attend to more or less business during the last five years of his life.

Without undertaking to restate all the evidence on this subject, it appears from the bill of exceptions that in the year 1909 he made a written contract with a daughter, Mrs. Tiplady, for the support of himself and wife. In October or November of 1909 he borrowed $500, and to secure the same executed a note and mortgage upon his property. In February, 1910, he executed a written lease of his farm to the plaintiff, and in the same year he signed as bail for the plaintiff. During most of the period of time covered by the hypothetical question, he sold more or less of his share of the crops raised on his land and collected the pay therefor. Most of these facts appear from the testimony of witnesses called by the plaintiff himself, and the fact that the testator transacted the business above mentioned is not seriously disputed. Indeed, the only evidence to the contrary is that of the two witnesses mentioned, who testify, that they do not know of his doing any business.

It is clearly the law that jurors should disregard the answer of witnesses to hypothetical questions in case they find the hypothesis not in accordance with the facts. Under such circumstances the jurors must be told that the opinion is of no value. So that, assuming that the question under consideration was in such form that it should have been allowed to be answered, yet it would have been the duty of the trial judge after the evidence was all in, and it apepared that the assumed fact was clearly and manifestly not sustained by the evidence,

to have directed the jury to disregard the answer. If, then, it would have been the duty of the jury to disregard the answer of the expert witnesses, it could not be prejudicial error for the trial judge to refuse to permit the question to be answered.

In propounding a hypothetical question to an expert witness, counsel may assume any material fact which the evidence tends to establish, but it is not reversible error to sustain an objection to such question if the whole evidence discloses that such assumed fact is clearly disproved by the manifest weight of the evidence. 17 Cyc., 260; *West* v. *Knoppenberger*, 26 O. C. C. 168, (4 N. S. 305); *McLean* v. *Cincinnati*, 16 Dec. 459, 462, (3 N. S. 676); *Rogers Expert Testimony*, Sec. 32.

In view of the whole evidence, we find no prejudicial error in the action of the court in sustaining the objection to this question.

The defendants called a non-expert witness who was not present at the time of the execution of the codicil on October 20th, 1911, and of whom inquiry was made on the witness stand as to the capacity of the testator for transacting the ordinary business affairs of life on that date. Over the objection of the plaintiff, the witness was permitted to answer, and the answer was favorable to the defendants. We think this question was improper for the reason that non-expert witnesses must confine their opinions to the capacity of a testator to a time when he is under their observation.

This was the only witness called by the defendants in which the rule just given was violated, but it was in fact violated in questions that were asked by counsel for the plaintiff. We can not believe, in view of the state of the record in this case, that if the objection had been sustained any different result could have been reached from that which is expressed by the verdict. The provisions of Sec. 11364 G. C., would seem to clearly cover this aspect of the case, and that section has been applied to a case for the contest of a will in a decision by the Supreme Court in *Dunlap* v. *Dunlap*, 89 Ohio St. 28 [104 N. E. 1006] where the following language is used:

"While holding that the admission of neither of the two objectionable questions by the trial court constitute error, the

Rogers v. Monroe.

court is of the opinion that if it be conceded that they are suf-
ficiently objectionable to constitute error, yet it would not be
error of such substantial and prepudicial nature as to warrant
the setting aside of the verdict of a jury founded on otherwise
legal and sufficient testimony.

"The salutary and enlightened provisions of Section 11364,
General Code, should serve as a powerful deterrent to all re-
viewing courts from reversing causes for any other reason than
that the alleged error was one affecting the substantial rights
of the adverse party. Applying the mandatory principles of
that section, it appears most clear to this court that had the two
objectionable questions and answers been omitted the issue in-
volved in the controversy would not have been settled otherwise
that it was."

The plaintiff to maintain his action offered in evidence cer-
tain photographs of the testator, shown to have been accurate
representations of him at the time they were taken, which was
eight or nine years prior to the date of the codicil. These photo-
graphs were not allowed to be introduced in evidence, and the
action of the court in rejecting them is assigned as error. The
marvelous accuracy of photographic representation when the
work is fairly and honestly done is common knowledge, and for
the courts to decline to utilize the information to be derived
from that art is to forego one of the most valuable aids for the
ascertainment of the truth. 1 Chamberlayne, Modern Law of
Evidence, Sec. 729; *Cincinnati, H. & D. Ry.* v. *DeOnzo*, 87 Ohio
St. 109 [100 N. E. 320].

We do not think the trial judge in refusing to admit in
evidence the photographs of the testator was unmindful of the
principle which has just been stated, nor did he commit error
in so holding. These photographs were taken eight or nine
years before the execution of the codicil and at a time when the
testator was about eighty-two years old. It is not claimed that
he was incompetent to make a will at that time. Without doubt,
the photographs accurately depict his features as they existed
when he was eighty-two years of age, but it does not appear that
they fairly represent him as he was at the age of ninety-one,
much less that they would aid the jury in ascertaining his

testamentary capacity at that time.  Notwithstanding the language of the circuit court in *Varner* v. *Varner,* 9 Circ. Dec. 273 (16 R. 386), holding that a photograph of the testator is not competent evidence, we are not convinced that such photographs taken near the time the instrument is executed might not be a useful item of evidence.  Indeed, in some cases it might be very persuasive evidence, but in the case at bar no prejudicial error occurred in rejecting the photographs taken eight or nine years before the execution of the codicil.

We think it proper to call attention to the fact that nowhere in the charge to the jury does the court state that the older of probate of the codicil to the will raises a presumption that the same is valid, nor did the court explain to the jury that such order of probate was *prima facie* evidence of the due attestation, execution and validity of the codicil.  Of course, this omission was not prejudicial to the plaintiff, but if the verdict had been against the validity of the codicil such omission would have required a reversal of the judgment.  We need only call attention to *Hall* v. *Hall,* 78 Ohio St. 415  [85 N. E. 1125], and *Bloor* v. *Platt,* 78 Ohio St. 46, 52 [84 N. E 604].

Finding no prejudicial error justifying a reversal, the judgment of the court of common pleas will be affirmed.

**Kinkade,** and **Chittenden, JJ.,** concur.